IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN D. ABREW,                          )
                                        )
                    Plaintiff,          )        Civil No. 05-1784-JO
                                        )
          v.                            )        <u>OPINION AND ORDER</u>
                                        )
COMMISSIONER, SOCIAL SECURITY           )
ADMINISTRATION,                         )
                                        )
                    Defendant.          )

    David B. Lowry
    Attorney at Law
    9900 S.W. Greenburg Road, Suite 235
    Portland, OR  97223

    Tim D. Wilborn
    Attorney at Law
    2020-C S.W. 8th Avenue,  PMB #294
    West Linn, OR  97068

     Attorneys for Plaintiff

Joanne E. Dantonio
Michael McGaughran
SOCIAL SECURITY ADMINISTRATION
701 Fifth Avenue, Suite 2900
M/S 901
Seattle, WA  98104

Neil J. Evans
UNITED STATES ATTORNEY'S OFFICE
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902

    Attorneys for Defendant

JONES, Judge:

Claimant John Abrew seeks judicial review of a final decision of the Commissioner of

the Social Security Administration denying his application for disability insurance benefits

("DIB") and supplemental security income ("SSI") disability benefits.  This court has jurisdiction

to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Following a careful

review of the record, the court concludes that the Commissioner's decision is supported by

substantial evidence, contains no errors of law, and must be affirmed.

## ADMINISTRATIVE HISTORY

Claimant filed applications for DIB and SSI on April 28, 1994, alleging that he had been

disabled since April 1, 1991, due to drug abuse and alcoholism ("DAA"), depression and

memory problems.  Tr. 75-77.  After an initial denial, the Commissioner issued a fully favorable

decision on August 9, 1995.  Tr. 179-86.  In that decision, claimant was found disabled due only

to his DAA.  Tr. 174.

Pursuant to changes in the Social Security Act ("SSA"), specifically The Contract With

America Advancement Act of 1996, Pub. L. No. 104-121 § 105 (a)(1)(C), which amended the

2 - OPINION AND ORDER

definition of disability under the Social Security Act to prohibit entitlement to disability benefits

for any individual whose disability was based on DAA, claimant underwent a continuing

disability review and was found to have experienced medical improvement.  His benefits were

terminated on January 1, 1997.  Tr. 547.

Claimant requested a hearing and on September 12, 1997, the ALJ held a de novo

hearing.  The ALJ concluded that when claimant used drugs or alcohol, he was disabled; when

he refrained from use, he was not disabled and was capable of returning to his past relevant

work.  Tr. 33.  After denial of review by the Appeals Council, claimant filed suit in district court.

Tr. 4-5.  Pursuant to a stipulation of the parties, the court remanded the case to the Commissioner

for further consideration.  Tr. 553-54.  Specifically, the ALJ was directed to reconsider the

evidence on the record, to call upon the services of a medical expert, if necessary, to reassess

claimant's physical and mental impairments and residual functional capacity, and to call upon the

services of a Vocational Expert ("VE"), if necessary, to render a new decision.  Id.

On remand, the ALJ held a second hearing.  In a decision issued October 2, 2001, the

ALJ found that while claimant could not return to his past relevant work, he could perform other

work that existed in significant numbers in the national economy and was, therefore, not

disabled.  Tr. 919-32.  The Appeals Council granted review and remanded the matter in part to a

different ALJ to obtain VE testimony regarding claimant's ability to do other work.  Tr. 937-39.

The second ALJ conducted a hearing on April 8, 2004, and on May 14, 2004, issued a decision

finding that claimant was able to return to his past relevant work.  Tr. 547-51.  Using VE

testimony and considering the Medical-Vocational Guidelines, the ALJ also found that claimant

was able to perform other jobs existing in significant numbers in the national economy.  Id.  The

Appeals Council declined review, making the ALJ's decision the final decision of the

Commissioner for purposes of judicial review.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence on the record as a whole.

42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993). The court must

weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion."

Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be

upheld if it is a rational interpretation of the evidence, even if there are other possible rational

interpretations. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989); Andrews, 53 F.3d at

1039-40.

## DISABILITY ANALYSIS

The Commissioner engages in a five-step sequential inquiry to determine whether a

person is disabled within the meaning of the SSA. 20 C.F.R. §§ 404.1520, 416.920. Each step is

potentially dispositive.

Step One: The Commissioner determines whether the claimant is engaged in substantial

gainful activity. 20 C.F.R. §§ 404.1520(4)(I), 416.920(b). If so, the claimant is not disabled. If

not, the Commissioner proceeds to step two.

4 - OPINION AND ORDER

Step Two:  The Commissioner determines whether the claimant has a severe impairment. 20 C.F.R. §§ 404.1520(4)(ii), 416.920(c).  If so, the Commissioner proceeds to step three.  If not, the claimant is not disabled and the inquiry is finished.

Step Three:  The Commissioner determines whether the claimant's impairment meets or equals one of the impairments listed in the SSA regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1. See also 20 C.F.R. §§ 404.1520(4)(iii), 416.920(d).  If the claimant's impairment meets or equals one of the listed impairments, he or she is disabled.  If not, the Commissioner proceeds to step four.

Step Four:  The Commissioner determines whether the claimant is capable of performing past relevant work.  20 C.F.R. §§ 404.1520(4)(iv), 416.920(e)-(f).  If so, the claimant is not disabled.  If not, the Commissioner proceeds to step five.

Step Five:  The Commissioner determines whether the claimant has the residual functional capacity ("RFC") to perform other work.  20 C.F.R. §§ 404.1520(4)(v), 416.920(g). At this step, the Commissioner has the burden of showing that the claimant can perform jobs that exist in significant numbers in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).  The Commissioner may meet this burden with the testimony of a VE or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2, if fully applicable.  If the Commissioner demonstrates that there are a significant number of jobs that the claimant can perform, then the claimant is not disabled.  Tackett, 180 F.3d at 1098-99; 20 C.F.R. §§ 404.1520(g), 416.920(g)(1).

5 - OPINION AND ORDER

## SUMMARY OF ALJ'S FINDINGS

In the 2001 proceedings, the ALJ employed the above five-step inquiry to evaluate claimant's alleged disability.  On remand, the Appeals Council did not vacate the step one through three findings; consequently, in the 2004 proceeding, the ALJ incorporated the first three steps of the 2001 evaluation into his opinion.  The ALJ then completed step four and step five of the evaluation process.   Thus, at step one the ALJ determined that the claimant had not engaged in substantial gainful activity at any time during the relevant period, from January 1, 1997, when his benefits were terminated through December 31, 1998.  This finding is not in dispute.[1]

Second, the ALJ found that claimant had medically determinable severe impairments in the form of a substance addiction disorder, dysthymic disorder, cognitive disorder and hepatitis C. This finding is in dispute.

Third, the ALJ determined that although claimant's impairments were "severe" within the meaning of the Regulations, his impairments did not meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations Part 404.  This finding is not in dispute.

Next, the ALJ determined that claimant retained the RFC for a modified range of light work.  Specifically, the ALJ found that claimant could lift twenty pounds occasionally and ten pounds frequently, could sit for six hours total in an eight-hour workday and stand/or walk for six hours total in an eight-hour workday.  The ALJ stated that because of claimant's hepatitis B and C, he should not work in any food service related jobs.  The ALJ further found that given

---

[1]        The ALJ found December 31, 1998, to be claimant's date last insured.  The Commissioner accepts claimant's calculation that the date should be December 31, 2001, but correctly points out that modification of the date does not materially affect the ALJ's review or findings because the medical evidence remains the same.

claimant's moderate difficulties in maintaining concentration, persistence or pace, he was limited simple one- to three-step work that was routine in nature and did not involve tasks with detailed instructions to remember or carry out. Tr. 549. This finding is disputed.

At step four, based on the testimony of the VE, the ALJ found that claimant could return to his past relevant work as a service station attendant. The ALJ also completed step five of the inquiry and, based on the VE's testimony and in consideration of the Medical-Vocational Guidelines and relevant regulations, determined that claimant could perform other jobs that existed in significant numbers in the national economy, including jobs as cashier and motel cleaner. These findings are in dispute.

## STATEMENT OF FACTS

Claimant was born in 1945 and has a long and extensive history of drug use, dating back 30 years and involving many different types of drugs, including heroin (claimant's drug of choice.) Claimant obtained a general equivalency diploma and performed past work as a truck driver and warehouse worker. Medical evidence and other facts will be discussed below as necessary to explain my decision.

## DISCUSSION

Claimant challenges the ALJ's findings on several grounds. He contends that the ALJ did not properly assess his limitations by failing to fully develop the record, by rejecting medical opinions and by rejecting his testimony and the testimony of lay witnesses. Claimant also claims

that the ALJ's RFC findings were erroneous.  Finally, he argues that the ALJ's findings were

deficient concerning his ability to perform his past work or other work in the national economy.[2]

**1.    The ALJ's Assessment of Claimant's Impairments**

Pursuant to 20 C.F.R. §§ 404.1512 and 416.912, claimant has the burden of proving that

his impairments are severe.  An impairment is severe when it "significantly limits [claimant's]

physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  Claimant

contends the ALJ failed to develop the record, rejected medical evidence and ignored testimony

when determining that claimant's depression and anxiety disorder were not severe, and proposes

that if the ALJ had properly considered that evidence, he would have found claimant's depression

and anxiety disorder to be severe.  Based on my thorough review of the record in this case, I

disagree.  As the ALJ found, the objective evidence for the relevant period of time does not

support claimant's allegation that his alleged mental impairments of depression and anxiety

disorder are severe.

**A.    Medical Evidence**

Most of the medical evidence in this case predates January 1, 1997, the date claimant's

benefits were terminated.  I refer to this medical evidence only as a starting point for comparing

the relevant medical evidence.

In June 1994, John McManus, a psychology resident, examined claimant.  The Axis I

diagnosis included major depression and a note to rule out malingering.  McManus provided a

stark picture of claimant's mental condition, including mental confusion, anxiety, anger and

---

[2]    Claimant also argues in his opening brief that the ALJ employed the wrong sequential analysis, however, in his reply he concedes that the ALJ's sequential analysis was correct.

paranoia.  McManus opined that claimant's severe psychopathology could be explained given claimant's extensive drug and alcohol history.  It was, in fact, claimant's drug use that brought him to McManus--claimant could no longer control his 30 year heroin habit.  McManus's opinion was that claimant would not be able to work due to the consequences of chronic and severe dependence on drugs and alcohol.  Tr. 301.  McManus recommended that claimant be treated for depression and DAA, and that he be reevaluated after treatment and after he had been sober for six  months.

In August 1994, CODA progress reports show that claimant had no health problems. Tr. 324.  Later that month, claimant reported good health and denied any mental health history except for some mild depression that had worsened with the death of his wife in the last week. Tr. 329.

In May 1995, claimant was evaluated by Dr. Burns.  Two days before the exam, claimant injected heroin and, on the morning of the exam, consumed alcohol.  Dr. Burns diagnosed major depression, noting that claimant's memory problems were probably due to his DAA.  Tr. 309. Later in 1995, CODA progress notes reveal that claimant was taking Trazadone for depression and that he "hasn't been depressed since taking Trazadone."  Tr. 320.  Another note states that claimant was "doing well with mood."  Tr. 320.

Beginning in 1996, almost all mention of major depression and anxiety ceased.  In July 1996, claimant reportedly had been off heroin for six months, but still consumed alcohol two times per month.  His attention and concentration were intact and his memory was normal. Tr. 197.  In that same year, Dr. Smith diagnosed claimant with dysthymia and reported that claimant's memory was intact and that claimant was capable of carrying out simple, routine tasks

9 - OPINION AND ORDER

independently.  Tr. 209.  Also in 1996, Dr. Green reported claimant's subjective complaints of

significant fatigue and weakness were without objective evidence.  His diagnosis of chronic,

active hepatitis contained no mention of major depression or anxiety disorder, or that depression

limited claimant's ability to work.  Tr. 343.   Later in August 1996, Dr. Ferber diagnosed claimant

with  a mild dysthymic disorder and noted that claimant continued to have difficulty with

depression, but did not "meet criteria for a diagnosis of major depression disorder."  Tr. 349.

From 1997-1998, claimant was seen at Oregon Health Sciences University ("OHSU") at

least four times.  In only one of the four resulting reports was there any mention of depression.

Dr. Fields diagnosed claimant with a recurrent major depressive disorder, for which claimant was

not being treated.  Dr. Fields noted a vague component of anxiety associated with the depression.

In 2004, claimant was again seen at OHSU and there was no complaint of depression or anxiety

disorder.

Taken as a whole, these medical reports support the ALJ's assessment that any depression

and anxiety disorder claimant suffered while actively abusing substances dissipated when he

discontinued use.  There is no evidence that the alleged depression and anxiety significantly

limited claimant's ability to do basic work activities. [3]

### B.    Claimant's Testimony and Lay Witness Statements

Claimant argues that the ALJ improperly rejected his testimony and the testimony of his

lay witnesses.  Once the claimant established the existence of an impairment and a causal

---

[3]        Claimant also contends that the ALJ failed to properly develop the record by not
recontacting Dr. McManus.  I agree with the Commissioner that based on the evidence of record,
which was not ambiguous or insufficient, the ALJ was not required to further develop the record
to help claimant establish his claim.

10 - OPINION AND ORDER

relationship between the impairment and some level of symptoms, the ALJ must provide clear

and convincing reasons supported by substantial evidence to reject claimant's subjective claims.

Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 599 (9th Cir. 1999).

Furthermore, the ALJ must specifically identify what testimony is credible and what testimony

undermines the claimant's complaints.  Id.

       Claimant testified that he suffered from fatigue, memory problems, depression which

caused crying spells, panic attacks, dizziness, headaches, nightmares and poor sleep.  The record

supports claimant's subjective complaints of, for example, fatigue (Tr. 341), depression (Tr. 300),

panic attacks (Tr. 306), and poor sleep (Tr. 468).  The ALJ considered the testimony and found it

to lack credibility only with respect to claimant's allegation of an inability to work due to these

impairments.  Tr. 928.  The ALJ noted:

> The claimant testified he is unable to work due to fatigue, memory problems,
> depression which causes crying spells, panic attacks which occur once a
> week, dizziness, swelling of the hands/feet/legs, headaches, nightmares and poor sleep.
> The Administrative Law Judge has considered this testimony and finds it is not
> credible in regards to his allegation of an inability to work due to his impairments.
>
> There is nothing in the records which would substantiate [claimant's] allegations of
> panic attacks, crying spells, dizziness, headaches, nightmares or poor sleep.
> Objective findings as noted above show the ability to perform simple one-two step
> light exertional work despite his impairments of hepatitis C, cognitive disorder,
> substance addiction disorder, and dysthymic disorder.  His mental impairments
> only moderately limit his ability to maintain concentration, persistence, or pace.
> Further, at no time in the medical record did any treating or examining doctor
> opine, during the relevant period, the claimant was unable to work as a result of his
> impairments.  To the contrary, Dr. Ferber opines even with the [e]ffects of the
> claimant's continued alcohol consumption, he is able to perform basic work
> activities.  Dr. Ferber reports the claimant['s] affect was full, speech was regular
> rate and rhythm, and thought processes were sequential.  There was no suicidal or
> homicidal ideation or delusions and no auditory or visual hallucinations.  His
> attention and concentration were intact and he was alert and oriented to person,
> place [on] August 27, 1996 on cognitive examination.  There was good eye contact
> and he was cooperative.  There was no psychomotor agitation or retardation

11 - OPINION AND ORDER

evident and his immediate, short term and long term memory was intact.  Dr.
Ferber makes these findings after noting the claimant had abstained from illegal
drug usage.  When viewing Dr. Ferber's opinion against the other medical evidence
in the records, to include the opinions of Dr. Burns and those of the treating
physicians and treating mental health specialist at CODA, it is clear[] once the
claimant abstained from using drugs his entire mental functioning significantly
improved during the relevant period.

Tr. 928-29.

Thus, the ALJ found no objective evidence in the record to support claimant's claim that

he was unable to work as a result of depression and anxiety.  The ALJ identified specific evidence

that undermined claimant's complaints and gave clear and convincing reasons supported by

substantial evidence for discounting his testimony.

With regard to the ALJ's rejection of the lay witness statements, an ALJ may discount the

testimony of a lay witness if the ALJ gives reasons that are germane to the witness.  Dodrill v.

Shalala, 12 F.3d 915, 919 (9th Cir. 1993).   Here, two of claimant's friends submitted evidence on

behalf of claimant.  The ALJ partially rejected Michael Foster's opinion because it was not

supported by any of the medical evidence.  Foster's written statement rated claimant a "10" on a

scale of 0 to 10, with "0" being "no problem," and "10" being "extreme" in the categories

"activities of daily living," "concentration, persistence or pace," and " episodes of

decompensation."  Tr. 674-77.  Foster rated claimant an "8" in the category "social functioning."

Id.  The ALJ found that the ratings were inconsistent with the objective medical evidence,

however he accepted Foster's opinion to the extent Foster was reporting his observations of

claimant.  The ALJ found Pamela Gleason's August 2006 statement to be only partially credible

due to her assertion that claimant had been clean and sober for six months, which was

contradicted by Dr. Ferber's August 1996 report that claimant continued to use alcohol.  I

12 - OPINION AND ORDER

conclude that the ALJ provided legally sufficient germane reasons for partially rejecting the lay
testimony.

### 2.      The ALJ's RFC Finding

The ALJ made the following RFC finding:

> [C]laimant retains the residual functional capacity to lift twenty pounds
> occasionally and ten pounds frequently.  He can sit for six hours total in an eight-
> hour workday and stand and/or walk for six hours total in an eight-hour workday.
> He should not work in any food service related jobs as a result of his hepatitis B
> and C.  Given his moderate difficulties in maintain [sic] concentration, persistence
> or pace, he is limited to simple one to three step work that is routine in nature and
> does not involve tasks with detailed instructions to remember or carry out.

Tr. 549.   Because I find that the ALJ properly assessed the medical evidence and claimant's

testimony and that of his lay witnesses, I also find the ALJ's RFC finding adequately accounted

for all of claimant's limitations.

### 3.      The ALJ's Step Four and Step Five Findings

Claimant contends and the Commissioner concedes that claimant is unable to return to his

past relevant work as a service station attendant as the job exceeds claimant's RFC assessment.

However, the ALJ took the next step and also made a finding at step five that claimant was able to

perform other work in the national economy.  The ALJ made this determination in consideration

of the Medical-Vocational Guidelines, the relevant regulations, and the testimony of a VE.  The

ALJ properly included the RFC limitations that were supported by the evidence in the vocational

hypothetical questions posed to the VE, who identified two jobs that claimant could perform with

those limitations:  cashier (3 million jobs nationally) and motel cleaner (1 million jobs nationally).

13 - OPINION AND ORDER

The ALJ's step five finding is based on substantial evidence and meets the Commissioner's burden.

## CONCLUSION

Based upon a review of the record, the Commissioner's decision denying claimant benefits is supported by substantial evidence on the record as a whole and is, therefore, AFFIRMED.

DATED this 12th day of January, 2007.


/s/ Robert E. Jones
ROBERT E. JONES
U.S. District Judge

14 - OPINION AND ORDER